RAPHAEL v. TRASK et al.

(Circuit Court, S. D. New York. August 28, 1902.)

1. JURISDICTION OF FEDERAL COURTS—ANCILLARY SUITS.

A suit to restrain private persons from selling the stock of a railroad company is not ancillary to one to foreclose a mortgage on property of such company, to which the stockholders are not parties.

2. SAME—DIVERSITY OF CITIZENSHIP—SUIT AGAINST PARTNERSHIP.

To a suit to restrain a partnership from selling the stock of a railroad company, in which it is acting for itself and as agent for other stockholders, all the partners are necessary parties defendant, and a federal court is without jurisdiction of such suit where some of the partners are citizens of the same state as complainant.

In Equity. On plea to jurisdiction.

Charles Locke Easton, for complainant.

Parsons, Shepard & Ogden (Shepard & Smith, of counsel), for defendants.

THOMAS, District Judge. The present question relates to the jurisdiction of the court. It appears from the bill that the complainant, in 1901, filed a bill in the United States circuit court for the district of Utah against the Wasatch & Jordan Valley Railroad Company, the Rio Grande Western Railway Company, and the Union Trust Company of New York, as trustee, to foreclose a mortgage given by the first-named company, and to redeem from two underlying mortgages certain spurs of railroad sold on foreclosure, and thereafter continued in possession under claim of title by Rio Grande Western Railway Company for nearly 20 years before the bill was filed, of which company an accounting is also demanded. The defendants in the present action, composing the firm of Spencer Trask & Co., undertook to obtain certain of the stock of the Rio Grande Western Railway Company, and to sell the same to the representatives of the Denver & Rio Grande Railroad, which company proposed to acquire the "railroad of the Rio Grande Western Company by acquiring the common and preferred stock of that company." It is not understood from the bill that any sale or incumbrance of the railway or its franchises, directly or indirectly, was intended. Spencer Trask & Co., as private individuals, so far as appears, acting for stockholders of the Rio Grande Western Railway Company, and not for that company, proposed to sell stock issued by such company to persons acting for the Denver & Rio Grande Railroad Company. After the undertaking was under way, Spencer Trask & Co. learned of the foreclosure of the second mortgages, and in their public advertisement soliciting stock made the following statement:

"Since the commencement of the negotiations, one Raphael has instituted in the United States circuit court of Utah a suit against the title of the Western Company to the Bingham and Alta spurs of its railroad; and in

¶ 1. Supplementary and ancillary proceedings and relief in federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

making the contract for the vendors our firm gave its personal guaranty against any liability of the company in that suit. Although the company's solicitors are confident of success, it is proper that our guaranty be ratably shared by all who avail themselves of the contract made by us for the vendors. From the $80 per share and interest, mentioned above, we shall, therefore, deduct such amount per share as counsel shall advise us will amply protect us upon such guaranty. Such amount will be held in a special trust."

The bill states:

"That the members of said firm of Spencer Trask & Co. are not parties to the suit pending in Utah, and that there is no agreement existing between complainant and the other holders of the outstanding bonds similar to complainant's bonds and Spencer Trask & Co. by which the said proposed 'fund' shall be applied toward the satisfaction of complainant's bonds and the other outstanding bonds."

There are further allegations that the complainant—

"Is informed and believes that, if said consolidation, as set forth in the scheme contemplated by the advertisements referred to, is allowed to be carried out, without some stipulation between your orator and the members of the said firm of Spencer Trask & Co., as to the custody of the said fund proposed to be created as aforesaid, the rights of remote purchasers of the mortgage premises, upon which complainant claims a lien, will have intervened pending complainant's suit in Utah; so that, if complainant succeeds at the final hearing of his suit in Utah, it will require the bringing into the suit as defendants such remote purchasers as the Denver & Rio Grande Western Railway Company and their proposed successors."

The prayer for relief is:

"That a preliminary injunction be issued restraining the said members of the firm of Spencer Trask & Co. from selling the said shares of the capital stock of the Rio Grande Western Railway Company to the Denver & Rio Grande Western Railway Company, as set forth in the said advertisements of Spencer Trask & Co., and which injunction your orator prays may be made perpetual upon the final hearing of this suit, unless the firm of Spencer Trask & Co. shall agree to turn over to some trust company in the city of New York at and before the completing of said sale of said shares a sum of money, which may be determined by this court, out of the proceeds of said sale, as will be sufficient to satisfy complainant's claim and the other outstanding bondholders similar to his own upon the final hearing of complainant's suit in Utah."

From the above it appears that the complainant, seeking to foreclose a second mortgage covering a railroad in Utah, has filed a bill in New York against the members of the firm of Spencer Trask & Co. to prevent them from selling the stock of a company that for nearly 20 years has held the apparent title of such railroad derived from the sale thereof upon prior mortgages.

The first question is whether a suit to restrain private persons from selling the stock of a company is ancillary to a bill filed to foreclose the mortgages on the railway of such company. The defendants in the second suit are in no wise related to the cause of action in the first suit. They hold no property of the obligated corporations. They may not be asked to discharge the judgment, or to render any account looking to its payment. They have made no agreement with the complainant, or that inures to him. They chanced to be dealers, on their own account or that of others, in no wise in privity to

any party in the first suit, in the stock of a company whom the complainant hopes to show has no better title to the railway than that of earlier mortgagees in possession; and yet the complainant asks to restrain the transfer of such stock lest the mortgaged premises should not remain "in statu quo until the final hearing of complainant's suit in Utah." Under neither bill is any demand for any relief made against the stockholders. No process could run against them in case of favorable judgment in the first suit, and it would be indifferent to the complainant where or by whom the stock was held. Spencer Trask & Co. are entire strangers to them, and to all persons owing them any duty, and no fund reserved by that firm belongs to complainant, or could be reached by him; nor is such relief asked. The entire absence of privity between the parties in the second suit to any and all parties in the first suit or to the subject-matter thereof, the entire absence of any duty from the defendants personally or as trustees to the complainant, forbids even the suggestion that this suit is ancillary in its nature. A suit is not necessarily ancillary solely because it pretends to be such, and much less because the complainant so names it. The present bill on its face shows that it cannot be ancillary. The legal relation of the defendants to the former suit as attempted to be alleged is impossible. Mr. Peabody's affidavit doubtless stated his view that the fund was advantageous, rather than inimical, to the complainant, and such is the fact; but such expression of view does not estop the firm from procuring a judicial interpretation of the agreement between them, the vendors, and vendees. But, if this suit be not ancillary, this court has not jurisdiction, for two of the defendants and the complainant are residents of the state of New Jersey, while three are residents of New York. The complainant does not call attention to any authorities to the effect that jurisdiction of less than all the individual copartners would be sufficient, while the defendants multiply decisions tending in the holding or expression of views to show that jurisdiction may be acquired only in case all the partners be brought duly before the court. Stone v. South Carolina, 117 U. S. 430, 6 Sup. Ct. 799, 29 L. Ed. 962; Mason v. Eldred, 6 Wall. 231, 235, 18 L. Ed. 783; Adams v. May (C. C.) 27 Fed. 907; Duchesse d'Auxy v. Porter (C. C.) 41 Fed. 68; Bell v. Donohoe (C. C.) 17 Fed. 710. The conclusion to which these authorities point is aided by Hooe v. Jamieson, 166 U. S. 395–399, 17 Sup. Ct. 596, 41 L. Ed. 1049; Gage v. Carraher, 154 U. S. 656, 14 Sup. Ct. 1190, 25 L. Ed. 989; Holland v. Ryan (C. C.) 17 Fed. 1.

A decree will be entered dismissing the bill, with costs.